UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LILLIAN T.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:20cv332 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since March 10, 2015, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: obesity, lumbar degenerative disc disease, hand and wrist osteoarthritis, mild bilateral knee osteoarthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can frequently handle and finger with her bilateral upper extremities. She is limited to occasional exposure to extreme cold, vibration, or to hazards such as moving mechanical parts or unprotected heights.

6. The claimant is capable of performing past relevant work as a hospital admitting clerk, job development specialist, and an eligibility worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2015, through the date of this decision (20 CFR 404.1520(f)).

(R. 17-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on June 9, 2021. On July 12, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on August 18, 2021. Upon full review of the record in this cause, this court is of the view that the

Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

On April 18, 2016, Plaintiff filed for DIB alleging she became disabled beginning March 10, 2015. The claim was denied initially, upon reconsideration, and after a hearing on April 9, 2018. (R1. 141). The Appeals Council remanded the case and directed the ALJ to exhibit and address specific medical evidence. (R. 15, 159-60). On September 23, 2019, Plaintiff appeared before ALJ Jeanette Schrand for a second hearing, and on January 30, 2020, the ALJ issued an unfavorable decision. (R. 15-32).

Plaintiff was born on June 29, 1959. She was over age 55 at onset and by the time of the ALJ's most recent decision, she was age 60. (R. 354). Prior to Plaintiff's onset date, she treated

4

for blurred vision, hypertension (HTN), back pain, fatigue and metacarpal issues. (R. 505-06, 509, 523, 530, 538, 543, 579, 583, 934, 936). She also treated with a chiropractor for low back pain, degenerative disc disease (DDD) and muscle spasm. (R. 638-41).

In September 2015, Plaintiff treated for HTN and a prescription for physical therapy was issued. (R. 564, 600). She was discharged after presenting with pain and decreased range of motion ("ROM") to the lumbar spine. (R. 554-56). Plaintiff treated with pain management specialist, Dr. Simon Ho for debilitating pain rated at 9/10. She had severe pain with ROM maneuvers. (R. 650-51). A MRI for back pain and left leg numbness showed loss of normal lumbar lordosis, abnormal peripheral displacement of the nerve roots at L5 level, moderate left L4-5 foraminal stenosis and moderate bilateral SI joint arthritis. (R. 596, 653-54). Plaintiff received a L4 injection and a LSO brace. (R. 655, 658). She had tried and failed conservative treatment for vein issues. She had pain and discomfort to the lower extremities. Plaintiff was listed as suffering from venous HTN. She had left greater saphenous vein. (R. 666). Plaintiff continued chiropractic care with noted limited ROM and muscle spasm. (R. 668-70). Dr. Ho noted Plaintiff was doing "quite well" with ongoing therapy prescribed. (R. 672).

However, by November, it was noted that Plaintiff's discogenic/radicular pain had been present for at least three months and she had failed usual measures such as therapy, rest and medication management with a L4-5 epidural administered. (R. 680, 112). Pre-procedure, she had pain at 8/10. Post-procedure, she had 0/10 pain relief. However, the pain returned back to baseline and was stable and unchanged from the prior block. (R. 680, 682, 112). She had positive straight leg raise ("SLR"), ambulated with difficulty, and had antalgic behavior. (R. 682). The plan was for a repeat injection. (R. 684, 1114).

5

By January, Plaintiff's pain was down to 6/10. She had radicular pain at 2/10 and experienced a significant increase in functional capacity. (R. 686). She ambulated with difficulty and exhibited guarding and antalgic behavior. On exam, she had moderate pain with ROM. (R. 687). Despite the improvement, Plaintiff had persistent pain. (R. 687). A Lidoderm patch was prescribed and an injection ordered. (R. 687). Due to her venous insufficiency and inflammation, the plan was for a vein ablation. (R. 689, 692). In March, she underwent trigger point injections. (R. 693, 695, 1117). Plaintiff continued chiropractic treatment with noted limited ROM due to pain and spasm and increased pain with flexion and extension. (R. 697). She received a lumbar interlaminar epidural at L4-5. (R. 698). Dr. Ho completed a RFC form stating that Plaintiff could frequently lift 5 pounds, stand less than an hour, sit less than two hours and her legs needed to be elevated more than 25% based on the MRI findings. (R. 629-30).

In July, Plaintiff met with Dr. Ho for back pain rated at 6/10. She had persistent axial pain exacerbated by prolonged sitting and standing and worse on the right. (R. 703). On examination, ambulation and certain activities were guarded. She still had significant pain on ROM maneuvers. (R. 703). As a result of persistent pain, with suspicion for facet arthropathy, a diagnostic block was prescribed. (R. 704). She treated for venous insufficiency and bilateral left venous HTN and varicose veins with inflammation and underwent an ablation with a compression stocking applied. (R. 709). Prior to this, she engaged in leg elevation and stocking use with inadequate response. (R. 709). Thereafter she underwent left spider sclerotherapy sessions around the knee area. (R. 712). Despite venous and back issues documented in the record, a June 2016 consultative examination was relatively benign other than noting she was not able to stand from seated position without difficulty and she had trouble stooping or squatting. (R. 643-46).

Thereafter, Plaintiff received medial branch blocks (R. 714, 739-40, 744, 746-47, 753, 1122, 1125) and radiofrequency ablations. (R. 1127). Her primary care provider treated HTN and ordered an arterial Doppler of the lower left calf for right lower extremity pain. (R. 731). She participated in sclerotherapy. (R. 743).

In August 2016, Plaintiff returned to Dr. Ho exhibiting significant signs of neuritis, a common complication of the radiofrequency ablation. (R. 757). The plan was for a repeat branch block which occurred in September at L3-S1. (R. 766, 1129). In October, Plaintiff underwent a second consultative examination. She was wearing a left wrist brace and reported pain to the wrist and fingers. Her strength was 4/5 in all upper major muscle groups and dynamometer testing showed 3.2 force on right and 3.5 kg on left. Plaintiff had 3/5 strength to left hand on examination, antalgic gait, and was not able to stoop or squat completely. Significant ROM loss to the cervical and lumbar spine was documented. (R. 771-770). An X-ray showed minimal degenerative changes to the knees and left wrist. (R. 776, 801). A CT of the spine showed severe moderate severe of disc height at L4-5 and L3-4, broad-based disc osteophyte complex resulting in mild spinal canal stenosis and mild subarticular recess stenosis, moderate left and mild right foraminal stenosis. (R. 798).

Two weeks post-branch block, Plaintiff continued to have neuritis. (R. 799). She continued to have "pretty significant pain". (R. 800). Physical therapy was paused. (R. 800). In November, she reported stable symptoms with ambulation and certain movements guarded and pain with ROM. (R. 795). "She [had] responded very modestly to intervention procedures…at this point, she [was] continuing to have a waxing and waning course" so more conservative care was provided. (R. 796). By December she was stable with "moderate success" to her lower back. With

7

the winter weather, she was in more pain. Plaintiff ambulated with difficulty and exhibited guarding and antalgic behavior and pain with ROM. (R. 792). She was going to try physical therapy at St. Mary's Hospital and plan for trigger point injections which occurred in January. (R. 787, 789, 793, 1131). In February she was having "good success" in therapy. (R. 781, 1329-82).

By March, it was noted her lumbar pain problems returned and results from the radiofrequency ablation were "quite modest". (R. 778). Her pain had reacted to epidurals in the past by at least 50% for 6-8 weeks but the pain had reoccurred and she experienced a substantial deterioration in functional capacity. (R. 779). Plaintiff continued to treat with her primary care provider for HTN, obesity and left arm pain. (R. 830, 842, 882, 77). She received a lumbar epidural in June. (R. 805). In July, Dr. Ho wrote "at this point I think we are doing pretty well. We have treated the lumbar issues similarly to what we had done a year ago, and I think the results are as good as we would expect" with modest results. (R. 807). Her pain was about 40% better subsequent to the injection. (R. 806).

However, by February 2018, Plaintiff's pain had returned and was radiating to the lower extremities. She had not worked for a while and was looking for a job. She had been considering disability but now was a little unsure of herself with respect to this. (R. 812). On examination, she had positive SLR on the right. (R. 812). Again she was noted to experience a substantial deterioration regarding functioning. (R. 813). She underwent another course of epidurals at L4-5. (R. 810, 813, 1135). The results were short lived. She had persistent and chronic pain, had failed conservative measures and was not a surgical candidate. (R. 815-16). Her pain was too severe to tolerate therapy. (R. 816). More injections were provided. (R. 818, 1137). As a result of only modest improvement with epidurals, Dr. Ho recommended a surgical consult. (R. 1000-01).

8

It was noted Plaintiff had left sided carpal tunnel syndrome with a plan to monitor this condition. (R. 1000-01). Plaintiff was experiencing moderate varicose issues to her left lower ankle. (R. 974). She had a new varicosities with 2+ edema noted to the left lower extremity. (R. 992-93, 1022). An ultrasound showed left great saphenous vein below knee patency with moderate to severe reflux. (R. 1017). Plaintiff has been using compression stockings over the last year but the pain returned. (R. 1016). She had failed leg elevation and compression stockings with a plan for an ablation. (R. 1016). A MRI showed lumbar spondylosis most prominent at L3-4 and L4-5. (R. 1029). Plaintiff participated in physical therapy with reports of moderate difficulty with performing daily activities and note of pain at 7/10. (R. 1250-1305).

In July 2018, Plaintiff participated in a reevaluation of symptoms by Dr. Ho. Ambulation and certain activities were guarded. She had moderate to severe pain on ROM testing and a positive SLR. (R. 977-78, 985-87, 1009, 1139). Despite an injection (R. 998), she only had modest, 10% relief. (R. 1007). By December, she switched pain management. (R. 965-66).

In 2019, Plaintiff reported swelling to her bilateral hands and fingers. (R. 995). She received a lumbar epidural with minimal improvement and note on examination of positive SLR, loading test and failed prior conservative care. (R. 1067-68). A neurosurgeon recommended a decompression or fusion due to severe lower back pain with only minimal relief with conservative care. (R. 1144). In September, rheumatoid arthritis was ruled out and Plaintiff treated for multiple joint osteoarthritis. (R. 1474-77).

At the first hearing, Plaintiff explained she was 5'2" and 170 pounds. (R. 89). Weight gain was as a result of the fact she was not as mobile as she used to be. (R. 90). Plaintiff explained that she could not work due to her severe DDD which precluded her from lifting, carrying and standing

9

for long periods of time. (R. 92). She had tried therapy, medications, and epidurals and nothing worked. (R. 92). Plaintiff could not concentrate 85% of the time as pain was distracting. She did not feel she could be on her legs more than two hours due to severe back pain and leg cramping. She had problems with her left hand which resulted in pain and cramping. (R. 93). Bending of the left wrist caused her pain and limited her ability to use a computer. (R. 94). For the left wrist she just used the brace. (R. 95). Plaintiff received help from her daughter for chores and cooking meals. (R. 95).

At the remand hearing, Plaintiff again explained that her daughter came over and did chores. (R. 49). She did not drive; the potholes were hard on her back and driving caused her back pain. (R. 50). Plaintiff could not work due to severe back injuries that continued to get worse to the point she could not walk even two hours. Her job became so strenuous on her body she got to the point where she was in crippling pain. (R. 61). It got to the point where she was always in pain with severe leg cramps and muscle spasms, she could barely write with her right hand and could not move her left hand. (R. 62). Plaintiff last did therapy in 2018 and her doctors and physical therapist told her there was nothing more that she could do. (R. 62). She spent a couple of hours per day elevating her legs. (R. 65). She sat in a recliner that elevated her legs. (R. 65). She could not write or type with her right hand for more than two hours. (R. 66). She could stand/walk less than two hours due to lower back pain, varicose veins and swollen feet and she had knee problems. (R. 66). Plaintiff wore a brace on her left hand. (R. 67).

In support of remand, Plaintiff first argues that the ALJ erred in weighing her subjective symptoms. The regulations describe a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically

10

determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, ... and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

The ALJ discounted Plaintiff's symptoms based on the fact that Dr. Ho noted a waxing and waning of symptoms. (R. 30). Plaintiff contends that the ALJ cherry-picks this reference without understanding the full context of Plaintiff's condition. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)(An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding). Plaintiff points out that, after blocks, she suffered from neuritis with "pretty significant pain" resulting in physical therapy being paused. (R. 799-800). Thereafter, Dr. Ho noted only very modest response to interventions and she continued to wax and wane. (R. 796). Only a few months later, in March, Plaintiff was noted to have experienced a substantial deterioration in functional capacity. (R. 779). Plaintiff argues that the ALJ did not squarely address the flare-up issue.

Plaintiff further contends that the ALJ minimizes the treatment Plaintiff underwent, stating that Plaintiff had relief with injection therapy and was not entirely compliant with physical therapy

11

despite progressing well. (R. 30). However, the record reflects otherwise. In September 2015, Plaintiff was doing "quite well", yet by November Dr. Ho noted that discogenic/radicular pain had been present for at least three months and Plaintiff had failed usual measures such as therapy, rest and medication management with a L4-5 epidural administered. (R. 680, 112). Pre-procedure, Plaintiff had pain at 8/10. Post-procedure, she had 0/10 pain relief. However, the pain returned back to baseline and was stable and unchanged from the prior block. (R. 680, 682, 112). At the visit she had positive SLR, she ambulated with difficulty and had antalgic behavior. (R. 682). The plan was for a repeat injection. (R. 684, 1114). While the injection took her pain down to 6/10, by March 2016, Plaintiff continued to undergo trigger point injections (R. 693, 695, 1117), epidural injections (R. 698), medial branch blocks (R. 714, 739-40, 744, 746-47, 753, 1122, 1125) as well as radiofrequency ablations. (R. 1127). As a result of the ablation, she developed neuritis. (R. 757). At the consultative examination, Plaintiff had significant ROM loss and very reduced dynamometer testing to the hands. (R. 771-77). Dr. Ho continued to note modest success with pain management and intermittent antalgic gait and positive SLR. (R. 792). Therapy notes reference that Plaintiff was placed on hold to address issues related to pain, suggesting therapy was not as helpful as the ALJ determined. (R. 30, 1253). Later records reflect epidurals only helped by at least 50% for 6-8 weeks with pain returning with significant deterioration. (R. 799, 812). Again, Plaintiff presented with positive SLR and note of deterioration. (R. 812-13). She was described as having failed conservative care. (R. 815-16). Injections only provided 10% relief and were short-lived. (R. 1007).

  An ALJ can discount a claimant's testimony in light of routine and conservative treatment, as long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, *Huber*

12

*v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018), play doctor, *Suess v. Colvin*, 945 F. Supp. 2d 920, 929 n.13 (N.D. Ill. 2013); or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance, *Keiper v. Berryhill,* 383 F. Supp. 3d 819, 823 (N.D. Ind. 2019) (collecting cases). Here, the ALJ minimized the extent of treatment and made assumptions about the reasons for noncompliance without questioning Plaintiff.

Moreover, the record reflects that Plaintiff was not managing her pain and that more aggressive measures might be needed, contrary to the consultative examiner's assessment. (R. 30). Surgery was recommended. (R. 1474). Further, Plaintiff did not decline surgery due to the lack of severity of pain. Rather, the record reflects that she did not pursue surgery as she would no longer be able to bend at the waist. (R. 30, 1474). Many courts have found that under those circumstances an ALJ must consider the reasonableness of the claimant's fear before construing the claimant's reluctance to pursue aggressive treatment against her. *See, e.g., Nichols v. Califano*, 556 F.2d 931, 933 (9th Cir. 1977) ("A patient may be acting reasonably in refusing surgery that is painful or dangerous."); *Schena v. Sec. of Health and Human Servs.*, 635 F.2d 15, 19 (1st Cir. 1980) ("A reasonable fear may justify the refusal of treatment."); *Swanson v. Barnhart*, 190 Fed.Appx. 655, 657 (10th Cir. 2006);.

The ALJ states in the decision that Plaintiff had wanted to return to work but that her doctor had stated to wait. (R. 21). Again, no question was asked at the hearing as to what type of work Plaintiff wished to engage in, such as part-time work. (R. 21). Plaintiff stated that she was in severe back pain until recently with physical therapy and epidurals but her pain had returned and the plan was for another epidural. (R. 443). After this point, injections were not as helpful (R. 998)

13

with surgery recommended (R. 1144); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

While the ALJ found that in 2015 Plaintiff was non-compliant with physical therapy (R. 22), shortly thereafter a pain management record noted that she had failed conservative treatments such as physical therapy, due to pain. (R. 22, 561, 680). Again in 2018, Plaintiff stopped therapy. (R. 27, 1250). But around this time she was looking for a surgical option, and symptoms were listed as significant with injections providing only minimal relief. (R. 997-98, 1007, 1049). This would again imply that therapy was not working to the extent that the ALJ determined. (R. 22, 27).

The ALJ suggests that records from Plaintiff's general doctor provided mostly benign examinations which did not address back issues. (R. 30). However, this doctor was not overseeing Plaintiff's back issues. *See Wilder v. Chater*, 64 F.3d 335, 377 (7th Cir. 1995) (noting that a physician asking about "an eye problem, or back pain, or an infection of the urinary tract" is not looking to diagnose depression).

As to the ALJ's conclusion that Plaintiff's back pain complaints were "intermittent", the record documents years of ongoing physical therapy, chiropractic care, injection therapy, branch blocks and ablations with surgery recommended. Clearly, this is not a case of someone intermittently seeking treatment. (R. 30); (*see e.g.*, R. 693, 695, 698, 714, 739-40, 744, 746-47, 753, 757, 1117, 1122, 1125, 1127).

14

As to the upper extremity issues, the ALJ states that treatment was minimal and Plaintiff had full range of motion. (R. 30). However, Plaintiff used a left wrist brace. (R. 67, 95, 770-77). And in the second consultative examination, dynamometer testing showed 3.2 force on right and 3.5 kg on left, and 3/5 strength to the left hand which is not consistent with an individual being able to frequently use this hand for handling and fingering. (R. 30); SSR 83-10. Further records confirm carpal tunnel syndrome as well. (R. 1001).

With respect to the venous issues, the ALJ found this impairment non-severe, determining that Plaintiff had good response to procedures. (R. 18). To the contrary, in September 2015, Plaintiff had tried and failed conservative treatment for vein issues. She had pain and discomfort to the lower extremities. Plaintiff was listed as suffering from venous HTN. She had left greater saphenous vein. (R. 666). By early 2016, due to her venous insufficiency and inflammation, the plan was for a vein ablation. (R. 689, 692). Dr. Ho found her legs needed to be elevated. (R. 629-30). Plaintiff treated for venous insufficiency and bilateral left venous HTN and varicose veins with inflammation and underwent an ablation with a compression stocking applied. (R. 709). Prior to this, she was engaged in leg elevation and stocking use with inadequate response. (R. 709). Thereafter she underwent left spider sclerotherapy sessions around the knee area. (R. 712). Her primary care provider treated HTN and ordered an arterior Doppler of the lower left calf for right lower extremity pain. (R. 731). She participated in sclerotherapy. (R. 743). Plaintiff was experiencing moderate varicose issues to her left lower ankle. (R. 974). She had a new varicosities with 2+ edema noted to the left lower extremity. (R. 992-93, 1022). An ultrasound showed left great saphenous vein below knee patency with moderate to severe reflux. (R. 1017). Plaintiff had been using compression stockings over the last year but the pain returned. (R. 1016). She had

15

failed leg elevation and compression stockings with plan for an ablation. (R. 1016).

While Plaintiff concedes that the record is silent as to what occurred regarding the ablation, Plaintiff points out that the evidence of leg elevation, swelling, and the fact that improvement did not occur was not addressed by the ALJ. (R. 18). This evidence supports Plaintiff's testimony as to leg elevation which supports both Dr. Ho's opinion and her subjective statements.

In response, the Commissioner argues that the ALJ "acknowledged" evidence and by virtue of summarizing evidence, the ALJ's decision should stand. *See Erwin v. Astrue*, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012) ("Summarizing medical evidence is no substitute for actual analysis of medical evidence"); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence.").

The Commissioner argues the ALJ properly considered reasons Plaintiff stopped treatment for physical therapy citing the ALJ's summary of the evidence. However, the ALJ did not consider the actual record that Plaintiff's therapy was placed on hold to address issues related to pain, suggesting therapy was not as helpful as the ALJ believed. (R. 1253); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)(ALJ cannot ignore contrary lines of evidence).

The Commissioner argues that the ALJ "acknowledged" wrist weakness, pain and leg cramps. However, again, the Commissioner points to the ALJ's summary of Plaintiff's testimony, not to an actual analysis of the record. *Perry*, 945 F. Supp. 2d at 965. Despite a line of evidence showing significant deficits to the wrist and hands, the ALJ found that Plaintiff, a woman over the age of 60, could frequently handle and finger. (R. 770-77, 955, 1001). The Commissioner argues that there was minimal treatment with no swelling to the hands, but a physical examination

16

confirmed swelling in the bilateral hands with pain in the fingers. (R. 955). She had tenderness on examination to both wrists. (R. 1484). She reported arthralgia of the hands and wrists with throbbing and sharp pain worse with movement and hand usage. (R. 1481).

As to the venous insufficiency, the Commissioner and ALJ grossly discount the severity of the impairment. The Commissioner argues that conservative treatment was pursued and it only minimally impacted Plaintiff's ability to perform basic work activities. However, Plaintiff's treatment was not conservative, considering that she had ablations and sclerotherapy. (R. 709, 743); *see Schomas v. Colvin*, 732 F.3d at 709 (Contrasting 'conservative' treatment like over-the-counter medication with 'more aggressive' treatment like prescription narcotics and steroid injections). Additionally, contrary to the Commissioner's argument that it was unclear what additional functional limitations existed, there is clear evidence of the need for leg elevation by Plaintiff's providers. (R. 629-30, 709). An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

As the ALJ's analysis of Plaintiff's subjective symptoms failed to build an accurate and logical bridge between evidence and conclusion, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in evaluating the opinion evidence. Based on the filing date of Plaintiff's application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting § 404. 1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record."

17

*See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010). The ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

A treating physician has greater familiarity with plaintiff's conditions and circumstances, and therefore an ALJ may only discount a treating physician's opinion based on "good reasons" supported by substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Clifford*, 227 F.3d at 870. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c).

Plaintiff contends that the ALJ erred in her analysis of Dr. Ho's opinion. (R. 29). Because the ALJ did not give controlling weight to any of the preceding treating physician opinions, she had to "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Mos*s, 555 F.3d at 561; *see* 20 C.F.R. § 404.1527(c). An ALJ's failure to explicitly apply the checklist can provide a basis for remand. *See, e.g., Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

In the present case, the ALJ failed to consider the nature and extent of Plaintiff's treatment relationship with Dr. Ho. Under 20 CFR § 404.1527(c)(2)(ii), the ALJ "will look at" the treatment

that the treating source provided and the type of examinations and testing that the treating source has performed or ordered from specialists. Here, in weighing the treating physicians' opinion, the ALJ did not mention any techniques or exams conducted by Dr. Ho. (R. 29).

Nor did the ALJ expressly consider the specialty, or frequency of treatment, when weighing the opinion of Dr. Ho, a pain management specialist. 20 CFR § 404.1527(c)(5). The ALJ also failed to discuss the supportability and consistency of the opinions of Dr. Ho in her analysis of his opinion. *See* 20 CFR § 404.1527(c)(3)-(4). The regulations explain that supportability encompasses the preference given to a medical source that "presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings...." 20 CFR § 404.1527(c)(3). Whereas consistency is directed at the fit of the medical source's opinion in the context of the record as a whole. 20 CFR § 404.1527(c)(4). In this case, the ALJ did not address supportability or consistency when weighing the opinion of Dr. Ho.

Further, the ALJ found that the Agency opinions regarding light work were not supported by the record. (R. 29). The opinions pre-dated most of Dr. Ho's records and medical opinions and wrongfully observe that the vein issues resolved. (R. 132). Plaintiff argues that the RFC creates an evidentiary gap as "the ALJ failed to give weight to any of Plaintiff's treating sources, without an explanation that withstands even cursory scrutiny, failed to explain how the medical evidence in the record supported the RFC, and cherry-picked and mischaracterized evidence to support [her] conclusion". *Noak v. Saul*, 2:18- CV- 288-JEM, 2020 WL 1164432, at *5 (N.D. Ind. Mar. 11, 2020) citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' and she is not allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the

19

record.") (quoting *Clifford*, 227 F.3d at 872) (other citations omitted). Thus, because the ALJ erred in her analysis of Dr. Ho's medical opinions, remand is required on the issue of the proper weight to give to the medical opinion evidence.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED.

Entered: September 8, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court